FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

05 FEB 15 PM 2:10

SIGN_____
by DEPUTY CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CASINO CITY, INC.

VERSUS

UNITED STATES DEPARTMENT
OF JUSTICE

CIVIL ACTION

NUMBER 04-557-B-M3

**RULING**

This matter is before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or in the alternative, Federal Rule of Civil Procedure 12(b)(6).[1] The motion is opposed. For the reasons which follow, the Defendant's Motion to Dismiss[2] is GRANTED.

## I. Factual Background

The plaintiff Casino City, Inc. ("Casino City") is a United States company that maintains a website which derives revenue from running advertisements of overseas companies which offer online casino or sportsbook gambling.[3] Casino City argues that the "overseas companies" are "lawful." However, it does not allege

---

[1] Rec. Doc. No. 9.

[2] Rec. Doc. No. 9.

[3] Rec. Doc. No. 9.

Doc#41800                                      1

that it is legal for these businesses to accept wagers from United States bettors.[4]

Casino City filed this action challenging the application of the prohibition against aiding and abetting the commission of a federal offense to those who run advertisements for Internet and offshore gambling operations that take bets from bettors located in the United States.

On June 11, 2003, the Deputy Assistant Attorney General for the Criminal Division of the Department of Justice ("DOJ") sent a letter to the National Association of Broadcasters ("NAB"). It is important to note that this letter was not sent to Casino City. The letter stated that there were a number of advertisements for Internet gambling and offshore sportsbook operations. The Deputy Attorney General expressed concern that some companies were falsely suggesting to the public that such activities were legal. The letter advised the NAB that "Internet gambling and offshore sportsbook operations that accept bets from customers in the United States violate Sections 1084, 1952, and 1955 of Title 18 of the United States Code...."[5] Noting that the DOJ reserved the right to prosecute violators of the law, the letter also stated in part:

> Because of the possibility that some of your organization's members may be accepting money to place such advertisements, the Department of Justice, as a

---

[4]See Rec. Doc. No. 9.

[5]See p. 5, Rec. Doc. No. 9. and Def.'s exhibit A, p. 1.

> public service, would like you to be aware that the entities and individuals placing these advertisements may be violating various state and federal laws, and that entities and individuals that accept and run such advertisements may be aiding and abetting these illegal activities. Broadcasters and other medial outlets should know of the illegality of offshore sportsbook and Internet gambling operations since, presumably, they would not run advertisements for illegal narcotics sales, prostitution, child pornography or other prohibited activities. We'd appreciate it if you would forward this public service message to all of your member organizations which may be running such advertisements, so that they may consult with their counsel or take whatever other actions they deem appropriate.[6]

More than a year after this letter was sent, the plaintiff filed this suit. It is clear that the plaintiff has not received a target letter from the DOJ advising the plaintiff that it was the subject of a criminal investigation. While the DOJ has issued subpoenas approximately one year before the suit was filed, the plaintiff has not been served with any subpoena. The record is not clear as to whether the plaintiff is even a member of the NAB. The plaintiff continues to run advertisements on its website.

In 1961, Congress enacted 18 U.S.C. § 1084 (a), which is also known as the Wire Act that prohibits anyone "engaged in the business of betting and wagering" from:

> knowingly us[ing] a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers or any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets

---

[6]*Id.*

or wagers....[7]

In addition, 18 U.S.C. § 2 provides that anyone who aids and abets the commission of any "offense against the United States" is punishable as a principal. The other criminal statutes referred to in the June 11, 2003 letter were 18 U.S.C. § 1952,[8] and 18 U.S.C. § 1955.[9]

In its motion, the defendant states that the plaintiff does not have standing to file suit, the complaint fails to establish a credible threat of prosecution, the Court lacks subject matter jurisdiction, and the plaintiff has failed to state a claim because the challenged application does not violate the First Amendment. In response to defendant's motion, the plaintiff claims it does have standing to challenge the actions of the defendant, there is a case or controversy, and the defendant's actions violate the

---

[7]*See* p. 3, Rec. Doc. No. 9.

[8]18 U.S.C. § 1952 prohibits traveling in or using the mail or any facilities in interstate and foreign commerce to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of, " *inter alia*, "any business enterprise involving gambling....in violation of the laws of the State in which they are committed or of the United States."

[9]18 U.S.C. § 1955 prohibits the ownership, management, and/or supervision of an "illegal gambling business." The statute defines an "illegal gambling business" as one which "(I) is a violation of the law of a State or political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business, and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

plaintiff's First Amendment rights and constitute a reasonable threat of prosecution.

## II. Law and Analysis

### A. Motion to Dismiss under Rule 12(b)(1)

A motion under Rule 12(b)(1) governs challenges to a court's subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.[10] Courts may dismiss for lack of subject matter jurisdiction on any one of three bases:[11] (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[12] Furthermore, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.[13]

---

[10]*Home Builders Assn' of Miss, Inc., v. City of* Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)(*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

[11]The Court is aware of the recent Fifth Circuit case which indicates that the Court should be cautious in dismissing a suit for lack of subject matter jurisdiction where this issue is intertwined with the merits. *Montez v. Department of the Navy*, 392 F.3d 147 (5th Cir. 2004).

[12]*Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986)(*citing Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[13]*See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

**B.   The plaintiff fails to present a case or controversy.**

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' or 'controversies.'"[14] The United States Supreme Court has defined a controversy as one which must exist between two legal parties which brings forth legal issues and questions to be determined.  Specifically, the Supreme Court stated that "[a] 'controversy' in this sense must be one that is appropriate for judicial determination."[15]  The Supreme Court continued:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.[16] The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.[17] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of the facts.[18]

The Fifth Circuit Court of Appeals adopted this same legal standard in *Meltzer v. Board of Public Instruction of Orange*

---

[14]*Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

[15]*Aetna Life Insurance Co. Of Hartford, Conn.*, v. *Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937), quoting *Osborn v. Bank of United States*, 9 Wheat. 738, 819, 6 L.Ed. 204.

[16]*Aetna Life Insurance Co. Of Hartford, Conn.*, supra at 240, (internal citations omitted).

[17]*Id.* at 240-1 (internal citations omitted).

[18]*Id.* at 241 (internal citations omitted).

*County, Florida, et al.*[19] The Fifth Circuit explained that a case or controversy must consist of an actual legal dispute between two parties. The court specifically stated:

> [t]here can be no case or controversy where parties seek adjudication of only a political question, or merely seek an advisory opinion, or where the litigation presents merely an abstract, academic or hypothetical question, or where the question sought to be adjudicated has been mooted by subsequent developments, or where the plaintiff has no standing to maintain the action.[20]

Considering these well-established precedents, this Court finds that Casino City has failed to establish an actual case or controversy because it is clear it does not have standing to file this suit under the facts of this case.

**B.  Plaintiff does not have standing to maintain this action.**

In *Raines v. Byrd*,[21] the Supreme Court set forth the standing requirement as follows:

> [w]e have also stressed that the alleged injury must be legally and judicially cognizable. This requires, among other things, that the plaintiff have suffered 'an invasion of a legally protected interest which is....concrete and particularized,'

---

[19] 548 F.2d 559 (5th Cir. 1977).

[20] *Meltzer, supra* at 570, citing *Steffel v. Thompson*,

[21] 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849.

>   and that the dispute is 'traditionally thought to
>   be capable of resolution through the judicial
>   process.'[22]

The Supreme Court has demanded strict compliance with this standard.

One of the most often-cited cases regarding standing is the United States Supreme Court's decision in *Lujan v. Defenders of Wildlife*.[23] In *Lujan*, the Court authorized the need and historical purpose of the constitutional standing requirements:

>   Over the years, our cases have established that the
>   irreducible constitutional minimum of standing contains
>   three elements. First, the plaintiff must have suffered
>   an "injury in fact"-an invasion of a legally protected
>   interest which is (a)concrete and particularized,[24] (b)
>   "actual or imminent, not 'conjectural' or
>   'hypothetical.'"[25] Second, there must be a causal
>   connection between the injury and the conduct complained
>   of-the injury has to be "fairly traceable to the

---

[22]*Raynes v. Byrd*, *supra*, citing *Lujan v. Defenders of Wildlife, et al.*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

[23]504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). *See also Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001).

[24]*Lujan*, *supra*, at 560, quoting *Allen v. Wright*, 468 U.S. 737, 756, 104 S.Ct. at 3315, 3327, 82 L.Ed.2d 556 (1984); *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-41, n. 16, 92 S.Ct. 1361, 1368-9, n. 16, 31 L.Ed.2d 636 (1972). In n.1 of *Lujan*, The court notes that by particularized, they mean the "injury must affect the plaintiff in a personal and individual way."

[25]*Lujan*, *supra*, quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (in turn quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).

> challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court."[26] Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[27]

It is clear that the party asserting federal jurisdiction has the burden of proving these elements.[28] This Court finds that the plaintiff has failed to satisfy the requirements set forth above as a matter of law under the facts of this case.

In order to establish standing to challenge a criminal statute prior to prosecution, a plaintiff must demonstrate a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."[29] The Supreme Court explained these requirements as follows:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking

---

[26] *Lujan, supra*, quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).

[27] *Lujan, supra*, quoting *Simon, supra*, at 38, 43, 96 S.Ct. at 1924, 1926.

[28] *Lujan, supra*, at 561, 112 S.Ct. at 2136.

[29] *Babbit v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), citing *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

relief."[30]

However, the Supreme Court, relying on its recent decision in *Younger v. Harris*,[31] has also held that persons who do not have a legitimate fear of state prosecution, and whose fears are only imaginary or speculative, are not considered plaintiffs who have the requisite standing.[32] Thus, the Supreme Court has held that:

> [w]hen plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," they do not allege a dispute susceptible to resolution by a federal court.[33]

In the recent case of *National Solid Waste Management Ass'n, et al., v. Pine Belt Regional Solid Waste Management*,[34] the Fifth Circuit outlined the standing requirements that must be met by a plaintiff:

> To meet the constitutional standing requirement, a plaintiff must show (1) an injury in fact, (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision.[35]

---

[30]*Babbit, supra*, quoting *Doe v. Boston*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973).

[31]401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).

[32]*Id*.

[33]*Babbit, supra* at 288-89, 99 S.Ct. 2301, at 2309.

[34]___ F.3d ____ (5th Cir. 2004)

[35]*Id.*, citing *Procter & Gamble v. Amway Corp.*, 242 F.2d 539, 560 (5th Cir. 2001) (in turn citing *Bennett v. Spear*, 117 S.Ct. 1154, 1161 (1997); *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992)).

Applying the well-settled requirements of standing to the facts of this case, the Court finds that the plaintiff has not satisfied the necessary elements to establish standing to maintain this action. The Court will summarize the facts which support its conclusion that plaintiff has failed to establish standing to bring this action.

Casino City has failed to allege its intended activities constitute those which are prohibited by statute. Casino City argues that the previously mentioned DOJ letter which was sent to the NAB and other similar advertising associations gives them standing to file this suit. In this letter the DOJ stated that these entities and individuals which place advertisements for offshore sportsbooks and online casinos may be violating various state and federal laws, including 18 U.S.C. §§ 104, 1952, and 1955. Casino City argues that the letter further warned the NAB that accepting or running these advertisements may be aiding and abetting illegal activities, a Class E Felony, pursuant to 18 U.S.C. § 2.[36] It is clear Casino City in no way claims that it meets the statutory requirements for aiding and abetting with its own relationship to its customers. In fact, Casino City states that its activities are legal because it does not accept proceeds which come from illegal bets, deposits, or wagers placed by persons located in the United States or anywhere world-wide. Casino City

---

[36]*See* Rec. Doc. No. 1.

further contends that the company has taken "reasonable steps" to ensure that such proceeds are not received.[37] Because plaintiff has not shown that it intends to engage in a prohibited activity proscribed by statute, it has not met the first "prong" of the *Babbit* test outlined above.[38]

Casino City has also failed to demonstrate that it will be subject to a credible threat of prosecution. It is clear that:

> [p]ersons having no fears of state criminal prosecution except those that are imaginary or speculative do not have standing in federal court to seek to enjoin pending state prosecutions, where such persons do not claim that they have been threatened with prosecution, that a prosecution is likely, or that a prosecution is remotely possible, a feeling of being inhibited by the potential for prosecution being insufficient to confer standing.[39]

Casino City has conceded that although several subpoenas were sent to various entities and individuals, it has not been served with a subpoena. Also, Casino City fails to submit any evidence that it has in any other way been contacted by the DOJ regarding a criminal complaint. It is illogical to conclude that Casino City could in any way feel a threat of prosecution other than one of a speculative threat by simply alleging that other members of the advertising industry have been contacted. The record reveals that the DOJ has, in fact, sought to gain information from other

---

[37] *Id.*

[38] *See also Fox v. Reed*, 2000 WL 288379 (E.D. La. 3/16/00).

[39] 25 Fed. Proc., L.Ed. § 59:17, quoting *Babbit, supra.*

entities, but has not sought any information from Casino City. The record simply fails to support a finding that Casino City is in any way subject to a threat of investigation or an actual investigation.

The Court further finds that the elapsed time of one year between Casino City's receipt of the DOJ letter and alleged subpoenas does not persuade the Court that Casino City is in any danger of imminent prosecution. Therefore, the Court finds that Casino City has failed to show a credible threat of prosecution and plaintiff has failed to establish it has standing to file this suit as a matter of law under the facts of this case.

### C. Even if plaintiff did establish standing, it does not have a claim for a First Amendment Violation.

The Court has found that Casino City failed to show that there is a credible threat of prosecution pertaining to their "lawful" activities. If Casino City was prosecuted, it would be for illegal gambling activities. The Supreme Court has clearly outlined a four-part analysis pertaining to free speech in *Central Hudson Gas & Electric Corp., v. Public Service Commission of New York*,[40]:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at

---

[40] 447 U.S. 557, 567, 100 S.Ct. 2343, 2352, 65 L.Ed.2d 341 (1980)

> least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.[41]

The *Central Hudson* test, when applied to the facts of the case, clearly shows that plaintiff has failed to establish a First Amendment right. It is well-established that the First Amendment does not protect the right to advertise illegal activity. The remaining elements of the *Central Hudson* test are also satisfied. The government's interest is specifically directed towards the advertising of illegal activity, namely Internet gambling. The DOJ letter at issue in the case at bar states that it would like the plaintiff to be aware that "the entities and individuals placing these advertisements may be violating various state and federal laws, and that, entities and individuals that accept and run such advertisements may be aiding and abetting these illegal activities."[42] Thus, the speech which the DOJ is directing its concern only addresses illegal activity. Furthermore, the speech in which plaintiff wishes to engage is misleading because it falsely portrays the image that Internet gambling is legal. The

---

[41]*Id. See also Thompson v. Western States Medical Center*, 535 U.S. 357, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); *Lorillard Tobacco Co. v. Reilly*, 533 U.S> 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001).

[42]*See* Rec. Doc. No. 1.

Supreme Court has held that,

> there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communications more likely to deceive the public than to inform it,[43] or commercial speech related to illegal activity.[44]

Because plaintiff's speech concerns misleading information and illegal activities, it does not fall within speech that is protected by the First Amendment.

Furthermore, the government has a significant interest in regulating the activity in which plaintiff engages. Internet gambling is of significant interest to the government because of its accessibility by the general public, which includes children and compulsive gamblers. By targeting and punishing advertisers who utilize this type of information, the government reaches its goal of deterring this illegal activity. Thus, the Court finds that the *Central Hudson* test set forth above has been satisfied. Therefore, the Court finds that, even if the plaintiff had standing to bring this action, the plaintiff has no claim for a First Amendment violation.

---

[43]*Central Hudson, supra*, citing *Friedman v. Rogers,* 440 U.S. 1, 13, 15-15, 99 S.Ct. 887, 896-7, 59 L.Ed.2d 100 (1979), rehearing denied 4/16/79; *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 464-465, 98 S.Ct. 1923-1925, 56 L.Ed.2d (1978).

[44]*Central Hudson, supra*, citing *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973).

For the reasons set forth above, the defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)[45] is hereby GRANTED.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, February _15_, 2005.

                                    _____
                                    **FRANK J. POLOZOLA, CHIEF JUDGE**
                                    **MIDDLE DISTRICT OF LOUISIANA**

---

[45]Rec. Doc. No. 8.